# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

GEORGE E. BROWN, )
  )
 Movant, )
  )
v. ) Case No. 1:08CV182CDP
  )
UNITED STATES OF AMERICA, )
  )
 Defendant. )

## MEMORANDUM AND ORDER

George Brown brings this case under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Brown was originally sentenced to 240 months imprisonment following his conviction on a single count of possessing with intent to distribute five grams or more of cocaine base. Case No. 1:05CR178 CDP. He represented himself at the jury trial, with the assistance of appointed standby counsel. His conviction and sentence were affirmed on appeal. *United States v. Brown*, 499 F.3d 817 (8th Cir. 2007). After the U.S. Sentencing Guidelines relating to crack cocaine were amended, I reduced his sentence to 192 months. He appealed that sentence and it was affirmed. No. 09-2423 (8th Cir. March 26, 2010).

In his § 2255 motion (filed before the reduction of his sentence because of the amended crack guidelines), Brown alleged that he received ineffective

assistance of counsel in numerous respects. All of Brown's claims are conclusively refuted by the record. I will therefore deny the motion to vacate without a hearing. I will not grant a certificate of appealability as Brown has not presented a substantial showing of the denial of a constitutional right.

## **Background**

In March 2005, police in Sikeston, Missouri, executed a no-knock search warrant at George Brown's residence, 1704 Ford Street. Inside, they found over nine grams of a substance containing cocaine base. Brown told them that he won the drugs gambling, and that he did not intend to distribute the drugs.

The Eighth Circuit Court of Appeals summarized the evidence of the search warrant affidavit as follows:

> To obtain the search warrant, Detective Chris Rataj submitted an affidavit which included the following information: Detective Rataj's qualifications; Brown's criminal history; that Brown was being investigated for distributing crack cocaine; that Connie Franks had told police that she purchased crack several times from Brown at his residence; that a reliable confidential informant (CI) had, in the previous two days, bought crack cocaine and reported that Brown discussed having a handgun; and that Brown was a suspect who had admitted his involvement in a 1984 homicide.

499 F.3d at 819.

At his initial appearance, Brown told the Magistrate Judge handling pretrial matters that he wished to represent himself. The Magistrate Judge nevertheless

appointed the Federal Public Defender to represent Brown, and told him he could re-raise the request later. Brown did re-raise the request, and the Magistrate Judge ultimately recommended to me that Brown be allowed to represent himself. After a lengthy pretrial hearing, I granted his request. Both the Magistrate Judge and I also considered all *pro se* pretrial filings made by Brown, including those he made while he was still represented by counsel. Brown then represented himself at the two-day jury trial. He cross-examined the government's witnesses (including Detective Rataj and Connie Franks, referred to in the Court of Appeals summary above) and recalled Detective Rataj in his case. Brown did not testify but did make a closing argument.

Brown continued to represent himself at sentencing. The Presentence Report concluded that there was a total offense level of 32 (including as relevant conduct the other cocaine sales Connie Franks testified about at trial). Brown had 32 criminal history points (because he had 10 prior felony convictions and committed this crime within two years of his release from prison), which is more than double the number of criminal history points required to qualify for the maximum criminal history category under the guidelines, Category VI. His sentencing guidelines

range was 210 to 262 months.[1]  I sentenced him to 240 months, the midpoint of the guidelines range.  When the crack cocaine guidelines were amended, I reduced his sentence to 197 months, which was the midpoint of the revised guidelines range.  The Court of Appeals appointed counsel after Brown appealed the  conviction and original sentence.

Brown's § 2255 motion raises 17 grounds for relief.  Although most are claims of ineffective assistance of appellate counsel, he also makes several claims that his initially appointed counsel was ineffective during the pretrial phase of the case.

Brown alleges that the attorney initially appointed to represent him in the trial court was ineffective in the following ways:[2]

2.      He failed to adequately challenge the search warrant.

3.      He failed to seek suppression of Brown's post-arrest statements.

4.      He failed to argue that the grand jury was mislead and that there was no probable cause for the indictment (this claim is also raised against appellate counsel).

5.      He failed to object to the government's cross-examination of Connie

---

[1]Before trial the government had filed a criminal information under 21 U.S.C. § 851 alleging that Brown had two prior drug trafficking convictions.  This had the effect of raising the statutory minimums and maximums from 5 to 40 years in jail to 10 years to life imprisonment. 21 U.S.C. § 841(b)(1)(B).

[2]I am retaining Brown's numbering system.

Franks during the suppression hearing as being beyond the scope of direct examination.

6.  He failed to argue that the "no-knock" warrant was based on false information.

Brown raises the following claims of ineffective assistance of appellate

counsel:

1.  Failure to raise on appeal the claim that Brown was denied the right to represent himself during the pretrial proceedings.

4.  Failure to raise on appeal the argument that the grand jury was mislead and that the indictment lacked probable cause (this claim is also raised against pretrial counsel).

7.  Failure to challenge on appeal the Court's instructing the jury that the search and seizure was legal.

8.  Failure to challenge on appeal the court's refusal to base the jury instructions on possession of powder cocaine.

9.  Failure to raise a claim that defendant's rights under *Brady v. Maryland* were violated because the government did not provide a copy of Connie Franks' recorded statement until the morning of trial.

10.  Failure to argue on appeal that Brown could not have been convicted of the Class A felony of possession with intent to distribute more than five grams of crack cocaine because the indictment only alleged "cocaine base" and not "crack" cocaine.

11.  Failure to argue on appeal that Brown's sentencing guidelines calculations could not consider relevant conduct involving  more than 50 grams of cocaine base when the indictment only charged him with possession with intent to distribute more than 5 grams.

12.     Appellate counsel had a conflict of interest because he previously represented the man convicted of murdering Brown's son.

13.     Failure to argue on appeal that Brown was denied the right to present a witness from the utility company at trial who could have impeached Detective Rataj's testimony that he had contacted the utility company before seeking the search warrant.

14.     Failure to argue on appeal that movant was inappropriately denied the right to recall witness Connie Franks.

15.     Failure to argue on appeal that the substance at issue was not cocaine base.

16.     Failure to argue on appeal that Brown's rights were violated because the Court conducted all the voir dire examination of potential jurors.

17.     Failure to argue on appeal that the jury pool excluded African-Americans.

## Discussion

I will not hold an evidentiary hearing on this matter.  "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief."  *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted).  However, a hearing is not required when the claim is inadequate on its face or the record affirmatively refutes the factual assertions upon which the claim is based.  *Id.*  Because I find that Brown's claims are either inadequate or affirmatively refuted by the records and files before me, I will not hold a hearing.

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to succeed on an ineffective assistance of counsel claim, Brown must prove two elements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687. When examining counsel's performance, judicial scrutiny must be "highly deferential." *Id.* at 689. In addressing the second element, Brown must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). The court need not address both components if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

The same standard applies to both appellate and trial counsel. When a claim is based on the failure to assert an issue on appeal, the court does not ask whether

appellate counsel's decision to omit an argument was

> an intelligent or effective decision, "but rather whether his decision
> was an unreasonable one which only an incompetent attorney would
> adopt." . . . Counsel is not required to raise every potential issue on
> appeal. Indeed, the Supreme Court has recognized the "importance of
> winnowing out weaker arguments on appeal and focusing on one
> central issue if possible, or at most on a few key issues."

*Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (citations omitted).

Additionally, a defendant may not use § 2255 to re-litigate claims that have already

been considered on appeal. *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir.

2000); *Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir. 1993).

A.    **Claims that Pretrial Counsel was Ineffective**

**(Grounds 2, 3, 4, 5, 6)**

Four of Brown's five claims that the counsel initially appointed to represent

him was ineffective relate to the suppression motions. Ground 2 argues that

counsel failed to adequately challenge the search warrant; Ground 3 claims counsel

failed to seek suppression of the post-trial statements; Ground 5 alleges that

counsel improperly failed to object to cross-examination of Connie Franks during

the suppression hearing; and Ground 6 argues that counsel was ineffective because

he did not challenge the "no-knock" aspect of the search warrant. All of these

claims fail for multiple reasons.

First, Brown cannot show prejudice from any of his pretrial counsel's actions. When I agreed that Brown could represent himself, I agreed to consider all the arguments he had made on his own behalf, and I allowed him to provide further arguments regarding why he believed the Magistrate Judge's Report and Recommendation on the suppression motions should not be adopted. I considered all the evidence and arguments *de novo*, and counsel's performance could not have prejudiced Brown, even if it had been deficient. Brown had the opportunity, acting as his own counsel, to cure any defects that he believed had been caused by his initial counsel's ineffectiveness. Given that he was allowed to represent himself and that he was allowed to revisit all the pretrial matters, he cannot show he was prejudiced by his former counsel's actions.

Second, counsel's performance was not deficient in any respect. Brown argues that counsel failed to challenge the search warrant as lacking probable cause, that he failed to challenge the "no-knock" aspect of the warrant, and that he failed to seek suppression of Brown's post-arrest statements. But counsel *did* file suppression motions that raised all the issues Brown now complains about. While Brown continues to argue that Detective Rataj made false statements in the affidavit supporting the search warrant, counsel fully raised this issue and it was rejected.

The Court of Appeals also considered these challenges to the warrant and also concluded that it was supported by probable cause. The court agreed that Brown had, in fact, been given a hearing consistent with *Franks v. Delaware*, 438 U.S. 154 (1978), because both the Magistrate Judge and I considered all the evidence that Brown believes showed that the warrant application was false. At all three levels the courts concluded that the warrant was appropriately supported by probable cause. The Eighth Circuit stated:

> Given the totality of the circumstances, we find that the affidavit provided a substantial basis for the issuing magistrate to conclude that probable cause existed, even without the information regarding Connie Franks. And, if Franks' information is included in the analysis, it is not even a close call as to whether probable cause supported issuance of the warrant.

499 F.3d at 821. Counsel in fact raised all of these issues, and Brown again raised them on his own behalf. Counsel's performance in challenging the warrants was more than constitutionally adequate. Similarly, counsel appropriately raised and each court considered and rejected the argument that the state court had no basis for issuing a "no-knock" warrant. Brown's counsel was not ineffective as the search warrant was valid in all respects.

Brown's initial counsel also moved to suppress the statements on the basis that they were the fruit of an unlawful search, and also argued that the statements

were made as a result of coercion.  Both the Magistrate Judge and I considered these arguments, and we both rejected them.  The statements were made voluntarily and there was no violation of Brown's rights by the arresting officers or anyone else.  Counsel's performance in challenging the statements was not deficient.

Brown's other suppression argument is raised in his fifth ground, which claims that counsel was ineffective for failing to object to the government's cross-examination of Connie Franks at the suppression hearing.[3]  He believes that counsel should have objected that the cross-examination was beyond the scope of the direct examination.  As the government points out, the Federal Rules of Evidence do not apply to suppression hearings.  *See* Fed. R. Evid. 1101(d)(1).  Additionally, under Fed. R. Evid. 611(b), the Court always has the discretion to allow cross-examination to exceed the scope of direct.  Had counsel raised the objection, there is little likelihood that it would have been granted, and counsel cannot be faulted for failing to raise meritless objections.  Finally, a review of the suppression hearing testimony reveals that the questions on cross-examination were *not* beyond the scope of the direct examination.  Brown's attorney was not ineffective for failing to raise this argument.

---

[3]Brown called Franks to testify at the suppression hearing, but she was the government's witness at trial.

In Ground 4 Brown argues that both initial counsel and appellate counsel were ineffective for failing to challenge the indictment on the grounds that the grand jury lacked probable cause to believe Brown had committed the crime. This argument is based on Brown's belief that Agent Gregory committed perjury in his testimony before the grand jury because he was not involved in the case until after Brown was arrested. Even if Agent Gregory was not involved in the case initially, this does not render the indictment invalid. "It is well established that the grand jury may return an indictment based solely upon summary testimony presented by a law enforcement officer." *United States v. Blaylock*, 535 F.3d 922, 927 (8th Cir. 2008) (citing *Costello v. United States*, 350 U.S. 359, 361 (1956)). Even if Gregory was testifying based on other officers' reports or on other hearsay, the grand jury indictment was nevertheless supported by probable cause, so neither of Brown's attorneys were ineffective for failing to raise this argument.

## B.    Claims that Appellate Counsel was Ineffective

To the extent Brown's fourth claim raises ineffectiveness of appellate counsel, it is denied for the same reasons stated above. Brown's other claims that his appellate counsel was ineffective are equally meritless.

## Ground 1

In Ground 1, Brown argues that appellate counsel was ineffective for failing

to raise on appeal the argument that he was improperly denied his right to self-representation in the initial stages of the case. A criminal defendant has the right to waive counsel and conduct his own defense. *See Faretta v. California*, 422 U.S. 806, 819-20 (1975). A waiver of counsel must be "knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Page v. Burger*, 406 F.3d 489, 494 (8th Cir. 2005). At the initial appearance, the Magistrate Judge appointed counsel and denied Brown's request to represent himself at that time, but he stated that Brown could raise the request later. Brown did continue to ask to represent himself, and eventually the Magistrate Judge recommended that I allow him to do so. As discussed in more detail above, I allowed Brown to represent himself at trial, and both I and the Magistrate Judge considered all his *pro se* filings as well as all the issues he stated counsel should have raised. Brown was not prejudiced by anything his initial counsel did. Any problems potentially caused by the initial denial of self-representation were cured by Brown's ultimately being allowed to represent himself and his being allowed to raise any arguments he wished. There is no likelihood that the Court of Appeals would have reversed the conviction had appellate counsel raised this meritless argument, and appellate counsel was not ineffective for failing to do so.

**Ground 7**

Brown's seventh claim is that appellate counsel was ineffective for not arguing against the court's *Sanders* jury instruction. The government asked, and I gave, an instruction telling the jury that the search and seizure was lawful. The government asked for this instruction "to focus the jury's attention on the essential issues in the case." *United States v. Sanders*, 196 F.3d 910, 914 (8th Cir. 1999) (internal citation omitted). During trial, Brown repeatedly attempted to cast doubt on the legality of the search and seizure. The instruction was therefore properly given. Appellate counsel acted reasonably in deciding not to pursue this as an issue on appeal. Brown has failed to show that he was prejudiced by the decision, as there is no likelihood that the Court of Appeals would have reversed the conviction if this issue had been raised.

**Grounds 8, 10, 11, and 15**

The next group of claims all assert that appellate counsel was ineffective for failing to raise certain arguments about the drug quantity and type. These arguments are: the jury should have been given a powder cocaine instruction (ground 8); the substance was a non-crack form of cocaine base (10) or it was not cocaine base at all (15); and the drug quantity used at sentencing was improper (11). Brown's appellate counsel in fact raised these issues and the Court of

Appeals rejected them. The Court noted that in the Eighth Circuit, the government

is only required to prove that the substance is cocaine base, not that it is a smokable

form of cocaine base. *Brown*, 499 F.3d at 823. It held that the evidence that the

substance was cocaine base was strong, and it

> decline[d] Brown's invitation to foray any further into the issue of the
> possible difference between cocaine base and what is commonly
> known as "crack." The government in this case proved that the
> substance at issue was cocaine base, or crack cocaine, as contemplated
> by both the statute and the sentencing guidelines. First, the
> government chemist presented unchallenged testimony that the
> substance at issue tested positive for the presence of cocaine base.
> And, there was photographic evidence that the substance found during
> the search of the home was in "rock" form.

*Id*. at 824. The Court further found that there was no error in the calculation of

drug quantity for sentencing. *Id*. Counsel raised all of these arguments on appeal

and they were rejected on the merits. Counsel is not ineffective merely because he

did not prevail, and these claims for § 2255 relief all fail.

### **Grounds 9 and 14**

Brown's ninth claim is that his appellate counsel failed to argue that the

government had committed a *Brady* violation by not turning over a tape recording

of Connie Franks' statements to police until the first day of trial. In Ground 14 he

complains that counsel was ineffective for failing to appeal the denial of his request

to recall Connie Franks as a witness in his case after he had cross-examined her in

the government's case. The record shows that Brown had ample time to review the tape, and that nothing on it impeached Franks' testimony in any significant way.

Under *Brady*, the government must disclose evidence that is "favorable to an accused" and "material to either guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, "*Brady* does not require the government to disclose inculpatory evidence." *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996). The recording actually inculpates Brown because it demonstrates his involvement in trafficking crack cocaine. On the recording Franks tells the police that she obtained crack from Brown that same day (which she had smoked before the interview), that she bought crack from him regularly, that the most she had ever bought from him was $300 or $350 worth, that he usually came to meet her in a cab, and that she had known him for only two weeks.

The recording was turned over to Brown on the first day of trial, and he reviewed it during the lunch hour before he cross-examined Franks. "Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, *Brady* is not violated." *Id.* (internal citations omitted). At the end of the first day, I told Brown I would consider whether he could recall Franks and instructed him to be prepared to play the specific tape portions to me the next morning to show why he should be allowed to recall her. The next

morning Brown indicated that he wished to recall Franks and play two portions of the recording. Franks had testified on direct that she had known Brown since December 31st, but on the recording, which was made on January 19, she said she had known him for "a couple of weeks." I ruled that this five-day difference was insignificant and did not impeach her credibility in any significant way. The second portion did not impeach her testimony at all, but instead contradicted Rataj's earlier testimony that she gave him Brown's correct address. On the tape, Franks gives the correct house number, but the street name discussed was one block from the actual street. This part of the discussion between Franks and Rataj on the recording was ambiguous, and I concluded that this was such a minor point that any probative value it had was outweighed by the danger of unfair confusion, misleading the jury, and wasting time. This was especially true given Brown's continued attempts to challenge the validity of the search warrant, which, as discussed above, had already been upheld.

The evidence on the tape was not exculpatory, so it was not *Brady* material, although, of course, it was a prior statement of the witness that the government was required to turn over under the *Jencks* Act, 18 U.S.C. § 3500. The government turned the evidence over within the time limits of that Act, and even if it did constitute *Brady* material, the government complied with that doctrine by turning

the tape over the first day of trial. I continue to believe any impeachment value was extremely limited. Had appellate counsel decided to pursue this issue on appeal, it is not at all likely that the Court of Appeals would have reversed the conviction. The tape was largely damaging to Brown, and Franks' description of her drug dealings with Brown were entirely consistent with the government's theory. The other evidence against Brown – including the seizure of the large quantity of crack from him – was so strong that Brown cannot meet the burden of showing that the appeal would have had a different result if counsel had raised this issue.

### Ground 12

Brown's twelfth claim is that his appellate counsel was laboring under a conflict of interest. Brown alleges that after appellate counsel failed to provide him with the briefs filed in the Eighth Circuit and failed to raise grounds that Brown had asked him to raise, Brown "subsequently . . . found out why counsel had been so reluctant in his duties." The alleged conflict is that appellate counsel told Brown that he had earlier represented the man who had been convicted of killing Brown's son. According to Brown, after his son was murdered in 2003, several witnesses had refused to cooperate with police. Brown convinced the witnesses to cooperate, and the man who killed his son was convicted. Brown later filed a *pro*

*se* civil negligence suit against the doctors and hospital who had treated his dying son.[4]  At some point after the Eighth Circuit appointed counsel in this case, Brown asked the lawyer to represent him in the pending medical negligence case. According to Brown, counsel said he had a conflict because he had earlier represented the defendant in the murder case.  Brown alleges that: "Counsel's failure to perform to his fullest for Petitioner during the direct appeal proceeding allowed him to get even with Petitioner for his role in securing witnesses against counsel's client in the state criminal proceeding."

Brown has a right to a conflict-free counsel.  To obtain post-conviction relief on this claim, Brown must show: (i) that a conflict of interest existed, and (ii) that the conflict adversely affected the attorney's subsequent performance.  *Ausler v. United States*, 545 F.3d 1101, 1104 (8th Cir. 2008) (citing *Mickens v. Taylor*, 535 U.S. 162, 168 (2002)).  The defendant must demonstrate adverse effect, which requires he prove "some actual and demonstrable adverse effect on the case." *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (quotation omitted). Brown has shown none of these things here.  First, even if counsel had previously represented the person who murdered Brown's son, and even if that created a

---

[4]Although Brown has filed at least nine *pro se* civil suits in this court, none appears to be the medical negligence suit regarding his son's treatment, which I assume was filed in state court.

conflict that would prevent counsel from involvement in a suit arising from that same death, that is not a conflict of interest in this case. Additionally, Brown has not shown that this alleged conflict actually affected the representation here. As set out throughout this opinion, Brown has shown nothing that would lead a reasonable person to believe counsel performed his duties here below an acceptable level of competence. Indeed, it appears to me that counsel raised valid arguments on appeal, and that Brown is simply not satisfied with the outcome and so blames counsel's strategic decision not to raise meritless issues on appeal. Brown's claim that counsel had a conflict affecting his performance here is unfounded.

### Ground 13

Brown's thirteenth claim is that his appellate counsel was ineffective because he failed to challenge on appeal my refusal to allow him to call utility company witness Bill Culp at trial. Culp had testified at the suppression hearing that he was the person law enforcement usually called when they wished to find in whose name utilities at any given address were listed. He testified that he did not recall anyone asking about the address listed in the search warrant. He also testified that the utility records showed it was a name other than Brown's, which contradicts Detective Rataj's statements. Both the Magistrate Judge and I considered this evidence in ruling on the motion to suppress, and the Court of

Appeals discussed the issue in a footnote. *Brown*, 499 F.3d at 821, n. 6. I did not allow Brown to call Culp to testify at trial, because the testimony did not go to the merits of the charges against Brown but only to the validity of the search:

> Mr. Culp is not testifying about whether you possessed crack cocaine on that date. He wasn't there at the time of this offense. He's not testifying about anybody buying crack from you, or anything else, so these issues are related, again, to the suppression issues which were litigated previously, and to a very collateral matter, and I'm not going to allow you to call Mr. Culp for impeachment purposes . . .

Trial Transcript, Vol II., at 22. As stated before, the Court of Appeals agreed that there was probable cause for the search warrant, and the Court of Appeals referenced the address dispute. To the extent that Brown argues that this testimony was necessary to impeach Rataj's testimony, it is a very attenuated argument. There is no reasonable likelihood that the jurors would have decided not to convict Brown had they heard this evidence, and there is no reasonable likelihood that the Court of Appeals would have reached a different conclusion. Appellate counsel was not ineffective for failing to raise this issue on appeal.

## **Ground 16**

Brown's sixteenth claim is that his appellate counsel failed to argue that Brown was denied the opportunity to question jurors during voir dire. The court is not required to allow attorney questioning of jurors: "Federal Rule of Criminal

Procedure 24(a)(1) permits a district court to conduct the voir dire examination, making such use of the questions submitted by the parties as it deems proper." *Hamling v. United States*, 418 U.S. 87, 139 (1974). I gave Brown the opportunity to propose voir dire questions; he proposed questions; I asked many of the questions he proposed. There is no likelihood that the Court of Appeals would have reversed the conviction on this basis, and Brown's counsel was not ineffective for failing to raise this meritless issue on appeal.

### Ground 17

In Ground 17 Brown argues that his appellate counsel was ineffective because he failed failed to argue that the jury pool excluded African-Americans. In order to prove a violation of a Sixth Amendment right to a jury comprised of a fair cross section of the community, Brown must prove: (1) African Americans are a distinctive group in the community, (2) their representation in his venire was not fair and reasonable in relation to their representation in the community, and (3) their under-representation resulted from their systematic exclusion from the jury-selection process. *United States v. Morin*, 338 F.3d 838, 843 (8th Cir. 2003) (citing *United States v. Sanchez*, 156 F.3d 875, 879 (8th Cir. 1998)). Brown does not allege that the court deviated from its jury selection plan, which has been accepted as legal. *See Roberson v. Hayti Police Department*, 241 F.3d 992, 997 (8th Cir.

2001). Brown also does not offer any evidence to support a systematic exclusion of African Americans from the jury pool. As Brown has shown nothing that would allow this challenge to succeed, he has not shown that his appellate counsel was ineffective for failing to raise the issue.

### Certificate of Appealability

As Brown has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of George E. Brown to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Brown has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

A separate judgment in accordance with this Memorandum and order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2010.